CV 14        0610

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MEGA CONTRACTING GROUP LLC,                          Case No. CV

                        Plaintiff,     JOHNSON    **COMPLAINT**

        -against-

ADS WINDOWS, INC., FIRST MERCURY
EMERALD INSURANCE SERVICES, INC. and                 Plaintiff demands trial by jury
FIRST MERCURY FINANCIAL CORPORATION,

                        Defendants.
-----------------------------------------------------------------X

    Plaintiff Mega Contracting Group LLC, by and through its attorneys, Hollander &

Strauss, LLP, as and for its Complaint against ADS Windows, Inc., First Mercury Emerald

Insurance Services, Inc. and First Mercury Financial Corporation, alleges as follows:

## JURIDICTION AND VENUE

    1.    Plaintiff Mega Contracting Group LLC ("Mega") was at all times relevant hereto

and is a domestic limited liability company organized and existing under the laws of the State of

New York, with its principal place of business located at 22-60 46th Street, Astoria, New York.

    2.    Upon information and belief, defendant ADS Windows, Inc. ("ADS") was at all

times relevant hereto and is a foreign corporation organized and existing under the laws of the

State of New Jersey and authorized to transact business in the State of New York with its

principal places of business located at 25 Star Street, Iselin, New Jersey.

    3.    Upon information and belief, defendant First Mercury Emerald Insurance Service,

Inc. ("First Mercury Emerald") was at all times relevant hereto and is a foreign corporation

organized and existing under the laws of the State of Delaware with its principal place of business located at 1 South Wacker Drive, Suite 1350, Chicago, Illinois.

4.     Upon information and belief, defendant First Mercury Financial Corporation ("First Mercury Financial") was at all times relevant hereto and is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 26600 Telegraph Road, Southfield, Michigan.

5.     The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

6.     The Court has jurisdiction of the subject matter of this action based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

7.     Venue of this matter is properly placed in this District pursuant to 28 U.S.C. § 1391(a)(1)-(3), based on: (a) plaintiff's residence; and (b) the location of the construction project pursuant to plaintiff's claims arise.

## AS AND FOR A FIRST CAUSE OF ACTION

### (BREACH OF CONTRACT)

8.     Plaintiff repeats and realleges each and every allegations contained above in Paragraphs "1" through "7" of this Verified Complaint with the same force and effect as if fully set forth at length herein.

9.     On or about October 30, 2009, non-party 560 Carroll Street LLC ("560 Carroll"), as owner, and non-party Mega Contracting Inc., as general contractor, entered into an agreement for the performance of certain construction work at the premises located at 255 Fourth Avenue, Brooklyn, New York ("the Project").

10.    On or about November 3, 2009, Mega Contracting Inc., as general contractor, and plaintiff Mega Contracting Group LLC ("Mega"), as subcontractor, entered into a written agreement pursuant to which Mega agreed to perform certain work at the Project.

11.    On or about July 22, 2010, Mega, as subcontractor/buyer, and ADS, as sub-subcontractor/seller, entered into a written agreement pursuant to which ADS agreed to furnish and install windows and/or sliding glass doors at the Project ("the Sub-Subcontract"). A copy of the Sub-Subcontract is annexed hereto as Exhibit "A".

12.    ADS breached the Sub-Subcontract by, *inter alia*, failing to install the windows and/or sliding glass doors in a workmanlike manner, failing to perform its work in accordance with the plans and specification and failing to establish a water-tight seal that would protect the Project from water infiltration.

13.    As a direct and proximate result of ADS' breaches of the Sub-Subcontract, Mega sustained damages including, but not limited to, the cost of repairing certain portions of the Project which were damaged by water infiltration caused by ADS' work.

14.    By reason of the foregoing, ADS is liable to Mega in an amount to be determined at trial, but not less than $250,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION

## (NEGLIGENCE & BREACH OF OBLIGATION TO INDEMNIFY)

15.    Plaintiff repeats and realleges each and every allegations contained above in Paragraphs "1" through "14" of this Verified Complaint with the same force and effect as if fully set forth at length herein.

16.    ADS had a duty to perform its work in a workmanlike manner such that there would be no water infiltration into the building at the Project through the windows or sliding doors.

17.    ADS breached its duty in that it performed its work in an unworkmanlike, careless and negligent manner.

18.    As a direct and proximate result of ADS' negligence, there was water infiltration and water damage at the Project.

19.    ADS failed to remedy the water damage resulting from its negligent work or to indemnify Mega for the cost of the repairs to the water damage pursuant to the provisions of the Sub-Subcontract, despite due demand for same.

20.    By reason of the foregoing, ADS is obligated to indemnify Mega for the cost of the repairs of the water damage caused by ADS in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION

### (BREACH OF EXPRESS WARRANTY)

21.    Plaintiff repeats and realleges each and every allegations contained above in Paragraphs "1" through "20" of this Verified Complaint with the same force and effect as if fully set forth at length herein.

22.    Upon information and belief, ADS was at all times relevant hereto and is engaged in the business of selling windows and sliding glass doors and was a merchant thereof.

23.    Pursuant to the Sub-Subcontract, ADS was required to and did expressly warranty its materials and labor at the Project.

24. The materials that ADS furnished at the Project, including windows and/or sliding glass doors, were deficient, defective and inadequate in that they failed to create a water-tight seal and prevent water infiltration at the Project.

25. Upon the emergence of the above referenced water infiltration issues, Mega demanded that ADS return to the Project to remediate its faulty work and correct all water infiltration damages arising therefrom.

26. ADS failed and/or refused to return to the Project and fulfill its warranty obligations.

27. As a result of the foregoing, ADS breached its warranty obligations to Mega..

28. By reason of the foregoing, ADS and is liable to Mega for the cost of the repair and/or replacement of the windows and sliding glass doors at the Project, including any consequential damages resulting therefrom, in an amount to be determined at trial, but in no event less than $250,000.00, together with costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (BREACH OF IMPLIED WARRANTIES)

29. Plaintiff repeats and realleges each and every allegations contained above in Paragraphs "1" through "28" of this Verified Complaint with the same force and effect as if fully set forth at length herein.

30. At the time ADS entered into the Sub-Subcontract, it was aware of the particular purpose for which the windows and glass doors it was to furnish would be used, and that, among other things, a water-tight seal was required to protect the Project from water damage.

31. ADS impliedly warranted that the materials it was to furnish (and the labor it was to perform) would be of merchantable quality and were fit for the particular purpose of

preventing water infiltration and that plaintiffs relied upon those warranties and on ADS' skill and judgment as to the quality of the windows and sliding glass doors and the suitability of such goods for use in the construction of the Project.

32.    The goods ADS furnished were not of merchantable quality and were not fit for their particular purpose of preventing water infiltration at the Project.

33.    As a result of the foregoing, ADS is liable to Mega for breach of the implied warranties of merchantability and fitness for a particular purpose.

34.    By reason of the foregoing, ADS and is liable to Mega for the cost of the repair and/or replacement of the windows and sliding glass doors at the Project, including any consequential damages resulting therefrom, in an amount to be determined at trial, but in no event less than $250,000.00, together with costs and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (BREACH OF INSURANCE CONTRACT)

35.    Plaintiff repeats and realleges each and every allegations contained above in Paragraphs "1" through "34" of this Verified Complaint with the same force and effect as if fully set forth at length herein.

36.    Pursuant to the Sub-Subcontract, ADS was required to purchase and maintain certain insurance coverage which would indemnify Mega from the above-referenced damages.

37.    Upon information and belief, ADS purchased an insurance policy ("the Policy") from First Mercury Emerald and/or First Mercury Financial (collectively, "First Mercury") in relation to ADS' work at the Project.

38.     Mega was a named insured and/or intended third-party beneficiary under the Policy.

39.     Upon the emergence of the above referenced water infiltration issues, 560 Carroll, Mega Contracting, Inc. and/or Mega duly demanded indemnification from First Mercury.

40.     First Mercury breached the Policy by disclaiming coverage and failing and/or refusing to provide indemnification under the Policy for the water damage caused by ADS' work at the Project.

41.     By reason of the foregoing, First Mercury Emerald and/or First Mercury Financial are jointly and severally liable to plaintiff in an amount to be determined at trial, but not less than $250,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (BREACH OF INSURANCE OBLIGATIONS)

42.     Plaintiff repeats and realleges each and every allegations contained above in Paragraphs "1" through "41" of this Verified Complaint with the same force and effect as if fully set forth at length herein.

43.     Upon information and belief, First Mercury's disclaimer of coverage was purportedly based upon one or more exclusions under the Policy.

44.     ADS was required by the Sub-Subcontract to obtain valid insurance that would not be subject to any such exclusions.

45.     In the event it is determined that First Mercury justifiably disclaimed coverage under the Policy, ADS is liable to Mega for breach of its insurance obligations under the Sub-Subcontract in an amount to be determined at trial, but not less than $250,000.00.

**WHEREFORE,** plaintiff Mega Contracting Group, LLC demands judgment against the defendants ADS Windows, Inc., First Mercury Emerald Insurance Service, Inc. and First Mercury Financial Corporation as follows:

A. On the First, Second, Third and Fifth Causes of Action, against defendant ADS Windows, Inc., in an amount to be determined at trial, but in no event less than $250,000.00;

B. On the Fourth Cause of Action, against defendants First Mercury Emerald Insurance Service, Inc. and First Mercury Financial Corporation in an amount to be determined at trial, but in no event less than $250,000.00;

C. For such other and further relief as the Court deems just and proper, together with the costs and disbursements of this action, including attorney's fees.

Dated: Great Neck, New York
   January 24, 2014

**HOLLANDER & STRAUSS, LLP**
Attorneys for Plaintiff

By: _____
  Michael R. Strauss (MS7780)
  40 Cutter Mill Road, Suite 203
  Great Neck, New York 11021
  (516) 498-1000

G:\1067-121\ADS\Complaint.doc

8

CARROLL - ADS Windows, Inc.

## INSTRUCTIONS FOR EXECUTING SUBCONTRACTS

**SUBCONTRACTOR IS TO:**

1. Make no marks whatsoever on this subcontract. Viz., erasures, additions, eliminations, interlineations, or marginal notes.

2. Authorized representative shall initial wherever "Initialled" stamp appears.

3. Authorized representative shall sign where indicated including title and date and under his signature type his name.

4. Return all copies to Mega Contracting Group, LLC and be certain that they are not folded or rolled.

After execution, one signed copy of the subcontract will be sent to the Subcontract.

---

## CONTRACT CHECKLIST

|  | Included | To be delivered by: |
|---|---|---|
| Rider A (breakdown) | ☐ | _____ |
| Bonds | ☐ | _____ |
| Current Wage Schedule | ☐ | _____ |

| DISTRIBUTION |  |
|---|---|
| Accounting   (1) |  |
| Proj. Manager  (1) |  |
| Subcontractor  (1) |  |

Reviewed signed copy & recommending for execution

_____        Date
(Project Manager)

Contract No. _____

This agreement, made this 22nd day of July in the year 2010 (Two Thousand and ten) by and between Mega Contracting Group, LLC based at 22-60 46th Street, Astoria, N.Y. 11105 (hereinafter also called the (Contractor) and ADS Windows, Inc. based at 25 Star Street, Iselin, NJ 08830 (hereinafter called the Subcontractor)

1. **Description of Work**

Witnesseth, that the Subcontractor and Mega Contracting Group, LLC agree as follows:

The Subcontractor agrees to assume the obligations and responsibilities undertaken by Mega Contracting Group, LLC and shall furnish and perform all the work, labor, services, materials, plant, equipment tools, appliances and all other things necessary to completely perform the work for the following:

- Survey all installed windows and/or frames, etc and correct any deficiencies as per manufacturer's recommendation and as per approved shop drawings
- Installation and completion of all windows, sliding doors, terrace doors and storefront system including but not limited to all receptors, subsills, sill covers, receptor clips, interior caulking, exterior caulking (caulk provided by subcontractor), backsealing at openings, subframes, glazing, etc for a complete system
- All work listed above shall be performed as per all drawings listed on A-000 inclusive of Bulletin #26 dated 12/12/09, Bulletin #27A dated 3/13/10 and Bulletin #28 dated 3/8/2010, all sketches, RFIs dated prior to the date of this contract and specifications listed on the Table of Contents dated 8/2/07, manufacturers' recommendations and all approved shop drawings
- *PLEASE NOTE: INSTALLATION OF ALUCOBOND OR COMPOSITE PANELS IS NOT INCLUDED IN THIS CONTRACT*

with no exceptions, (hereinafter called the **Work**) for and at Carroll Street (hereinafter called the **Project**), located on premises at 255 4th Avenue, Brooklyn, NY 11215 (hereinafter called the **Premises**), as shown and described in, and in strict accordance with the plans, Architectural & Mechanical, Specifications, General & Special Conditions & Addenda thereto prepared by KSQ Architects, PC (hereinafter called the **Architect**) and with the terms and provisions of the General Contract (hereinafter called the **General Contract**) between Mega Contracting Group, LLC and 560 Carroll Street, LLC (hereinafter called the **Owner**) dated November 3, 2009, and in strict accordance with the additional provisions annexed hereto and made a part hereof (   pages).

The list contained in this subcontract is not representative of all of the work to be done by the Subcontractor, but serves only as an illustration and clarification of the Subcontractor's work.

The drawings and specifications are intended to supplement each other and any work materials shown or mentioned in one but not the other are to be furnished by the Subcontractor without extra charge. The Contractor shall resolve any conflict between the drawing specifications and these subcontract provisions.

2. **Contract Documents**

The contract documents for this subcontract agreement consist of this document and any exhibits attached, the plans, specifications, drawings and portions of the General Contract and the Subcontract between General Contractor and Mega Contracting Group, LLC applicable to this subcontract agreement including the terms and conditions (General, special, supplementary and other conditions) and all addenda, amendments and modifications thereto. The contract documents are available for examination at reasonable times at the offices of Mega Contracting Group, LLC.

The Subcontractor represents and agrees that it has carefully examined and understands this Agreement and the other Contract Documents, has investigated the nature, locality and site of the Work and the conditions and difficulties under which it is to be performed, is familiar with the phasing requirements of the work, and that it enters into this Agreement on the basis of its own examination, investigation and evaluation of all such matters and not in reliance upon any opinions

1

or representations of the General Contractor or Mega Contracting Group, LLC or of the Owner, or of any of their respective officers, agents, servants, or employees.

With respect to the work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to the Owner, General Contractor and Mega Contracting Group, LLC by each and all of the terms and provisions of the General Contract and the other Contract Documents, and to assume toward the Owner, General Contractor and Mega Contracting Group, LLC all of the duties, obligations and responsibilities that General Contractor by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that the Owner, General Contractor and Mega Contracting Group, LLC, shall have the same rights and remedies as against the Subcontractor as the Owner under the terms and provisions of the General Contract and the other Contract Documents has against General Contractor and Mega Contracting Group, LLC with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. The terms and provisions of this Agreement with respect to the Work to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the General Contract and the other Contract Documents.

**3. Time of Completion**

Time for completion of the work is 2 month from the date of this contract.

The Subcontractor shall complete the several portions and the whole of the work as indicated on the current construction progress schedule. The construction progress schedule is periodically updated by Mega Contracting Group, LLC.

If an updated progress schedule requires earlier completion dates than the immediately previous schedule, and such new dates cannot be met by a subcontractor, then the subcontractor shall within 3 working days of the update notify Mega Contracting Group, LLC by certified letter of the reasons that the new dates cannot be met. Mega Contracting Group, LLC shall then determine the validity of such reasons and if they are found to be valid will revise the schedule as it seems necessary.

It is hereby expressly accepted by all parties that inability to provide sufficient workmen, and delay in ordering material shall not be a valid reason for inability to meet the revised dates.

Subcontractor shall carefully coordinate his Work with job requirements, furnishing, at all times, sufficient skilled workmen, material and equipment to perform the Work as the schedule develops and to the entire satisfaction of Mega Contracting Group, LLC and so as not to delay the completion of the whole and/or any part of the Work. It is understood and accepted by all parties that if at any point the Subcontractor falls behind the above progress schedule, then the minimum number of sufficient skilled workmen on the project shall be determined only by Mega Contracting Group, LLC.

Should the progress of the Work or of the Project be delayed by any fault or neglect or act or failure to act of the Subcontractor or any of its officers, agents, servants or employees so as to cause any additional cost, expense, liability or damage to Mega Contracting Group, LLC, to the General Contactor, to the Owner or any damages or additional costs or expenses for which the General Contactor or Mega Contracting Group, LLC or the Owner may or shall become liable, the Subcontractor shall and does hereby agree to compensate the General Contractor , Mega Contracting Group, LLC and the Owner for and indemnify them against all such costs, expenses, damages and liability.

If the progress of the Work or of the Project is delayed by any fault or neglect or act or failure to act of the Subcontractor or any of its officers, agents, servants or employees, then the Subcontractor shall, in addition to all of the other obligations imposed by this Agreement upon the Subcontractor in such case, and at its own cost and expense, work such overtime as may be necessary to make up for all time lost and to avoid delay in the completion of the Work and of the Project.

2

The subcontractor shall not be responsible for delays due to causes beyond its control and without its fault or negligence, provided only that any such delay is excusable in the General Contract or other Contract Documents. If at any time the subcontractor has reason to believe that the work or any portion thereof may not be completed on schedule, written notice setting forth the cause of the anticipated delay shall be given to Mega Contracting Group, LLC within forty-eight (48) hours after the occurrence of the event causing the delay, or if the General Contract and other Contract Documents provides for a shorter period, within sufficient time to permit Mega Contracting Group, LLC to give notice within the time allowed in the General Contract or other Contract Documents. The subcontractor shall not be entitled to any additional compensation as a result of any such delay except to the extent that the General Contractor receives damages for such delay from the Owner.

**4. Price**

The sum to be paid by Mega Contracting Group, LLC to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents shall be: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (hereinafter called the Price) subject to additions and deductions as herein provided.

The price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for or in connection with the Work, including but not limited to sales, use and personal taxes payable by or levied or assessed against the Owner, General Contractor, Mega Contracting Group, LLC or the Subcontractor. Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

**5. On-Site Supervision**

The Subcontractor shall have at all times a competent superintendent, acceptable to the General Contractor, Mega Contracting Group, LLC and to the Owner, who shall be present at the site at all times during the progress of the work, with authority to act for the Subcontractor. The superintendent shall not be changed without the approval of Mega Contracting Group, LLC. Coordination meetings: The subcontractor shall attend coordination meetings on a weekly basis or more often as deemed necessary by Mega Contracting Group, LLC. ~~Absence of the superintendent for more than one hour per day or for more than two days in a thirty-day period, shall be considered lack of supervision. The sum of $200.00 per day shall be deducted from the price for every day that lack of supervision occurs.~~

**6. Progress Payments**

On or before the 14th day of each month the Subcontractor shall submit to Mega Contracting Group, LLC in the form required by Mega Contracting Group, LLC a written requisition for payment showing the proportionate value of the Work installed to that date; the requisition will be reviewed and approved by Mega Contracting Group, LLC. From the approved amount the following shall be deducted: a reserve of ten percent (10%); all previous payments; and all charges for services, labor, materials, equipment and other items furnished by Mega Contracting Group, LLC or third parties to or chargeable to the Subcontractor; and the balance of the amount of such requisition as approved by Mega Contracting Group, LLC and for which payment has been received by the General Contractor from the Owner, shall be due and paid to the Subcontractor on or about the 30th day of the succeeding month, providing the subcontractor has submitted any report, or documentation as required by the Owner, up to the date of requisition. It is hereby expressly understood that no payment will be released to the subcontractor until Mega Contracting Group, LLC has on file satisfactory certificate of insurance as described in paragraph 35.

Together with each requisition the Subcontractor is to furnish an executed interim release of contractor, general contractor and owner for all liens and claims of subcontractor and third parties whose claims arise directly or indirectly from subcontractor's performance of the work in a form acceptable to the general contractor and owner.

Failure to submit a requisition as described above shall result, without exception, in non-payment to

3

the subcontractor until the next billing cycle.

The subcontractor shall receive payments in accordance with the detailed schedule, attached hereto and made a part hereof as Rider A, showing the breakdown price and as approved for payment by the Contractor and the supervising parties involved.

Mega Contracting Group, LLC reserves the right to advance the date of any payment (including the final payment) under this Agreement if, in its sole judgment, it becomes desirable to do so.

The Subcontractor agrees that, if and when requested so to do by Mega Contracting Group, LLC it shall furnish such information, evidence and substantiation as Mega Contracting Group, LLC may require with respect to the nature and extent of all obligations incurred by the Subcontractor for or in connection with the Work, all payments made by the Subcontractor thereon and the amounts remaining unpaid, to whom and the reasons thereof.

Payment by the Owner to the General Contractor, both with respect to progress payments and final payment, is an absolute and strict condition precedent to any liability whatsoever for such payments on the part of the Contractor to the Subcontractor and no such payment shall be required to be made by the Contractor to the Subcontractor until the General Contractor shall first have received payment from the Owner. This provision as to payment shall likewise inure to the benefit of the surety or surety on the General Contractor's performance and payment bonds, if any, with the Owner and the Subcontractor understands and agrees that no claim may be asserted and no action or proceeding whatsoever may be instituted by it against the General Contractor unless the General Contractor shall actually have first been paid by the Owner for the work, labor, services and/or material furnished by the Subcontractor.

*PLEASE NOTE JOB SPECIFIC REQUIREMENTS: REQUISITIONS SHALL BE SUBMITTED EVERY TWO WEEKS FOR APPROVAL BY ADS AND SUCH APPROVED REQUISITIONS SHALL BE PAID 2 WEEKS AFTER SUBMITTED*

7. **Final Payment**

The final payment shall be due within Ten (10) days after completion and acceptance of the Work by and the Architect, provided first, however, that:

(1) The General Contractor shall have received final payment therefor from the Owner for the work included in the subcontract,

(2) The Subcontractor shall have furnished evidence satisfactory to Mega Contracting Group, LLC that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred for or in connection with the work.

(3) The Subcontractor shall have executed and delivered in a form satisfactory to Mega Contracting Group, LLC a General Release running to and in favor of the General Contractor, Mega Contracting Group, LLC, the Owner and the Construction Manager. Should there prove to be any such claim, obligation or lien after final payment is made, the Subcontractor shall refund to Mega Contracting Group, LLC all monies that the General Contractor, Mega Contracting Group, LLC and/or the Owner shall pay in satisfying, discharging or defending against any such judgment recovered thereon and all costs and expenses, including legal fees and disbursements, incurred in connection therewith.

(4) The Subcontractor shall have delivered to the General Contractor, Mega Contracting Group, LLC and to the Owner, the guarantees required to be provided under paragraph 32.

The value of any Subcontractors work completed by Mega Contracting Group, LLC will be deducted from final payment without further notice. If the amount retained is insufficient therefore, the Subcontractor shall be liable for the difference and pay the same to Mega Contracting Group, LLC.

4

8.  **Payments Withheld**

If any claim or lien is made or filed with or against the General Contractor, Mega Contracting Group, LLC, the Owner, the Project or the Premises by any person claiming that the Subcontractor or any Subcontractor or other person under it has failed to make payment for any labor services, materials, equipment taxes or other items or obligations furnished or incurred for or in connection with the work, or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, the General Contractor, Mega Contracting Group, LLC or the Owner might become liable and which is chargeable to the Subcontractor, or if the Subcontractor or any Subcontractor or other person under it causes damage to the Work or to any other work on the Project or if the Subcontractor fails to perform or is otherwise in default under any of the terms or provisions of this Agreement. Mega Contracting Group, LLC shall have the right to retain from any payment then due or thereafter to become due an amount which it deems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which may be brought or judgment which may be recovered thereon, (2) make good any such nonpayment, damage failure or default, and (3) compensate the General Contracotr, Mega Contracting Group, LLC and the Owner for and indemnify them against any and all losses, liability, damages, costs and expenses, including legal fees and disbursements, which may be sustained or incurred by either or both of them in connection therewith. Mega Contracting Group, LLC shall have the right to apply and charge against the Subcontractor so much of the amount retained as may be required for the foregoing purposes.

9.  **Payments etc., Non Acceptance**

No payment (final or otherwise) made under or in connection with this Agreement shall be conclusive evidence of the performance of the Work or of this Agreement, in whole or in part and no such payment shall be construed to be an acceptance of defective, faulty or improper work or materials nor shall it release the Subcontractor from any of its obligations under this Agreement; or shall entrance and use by the Owner constitute acceptance of the Work or any part thereof.

10. **Extension of Time**

Should the Subcontractor be delayed in the commencement, prosecution or completion of the work by the act, omission, neglect or default of Mega Contracting Group, LLC or of anyone employed by Mega Contracting Group, LLC or of any other Contractor or Subcontractor on the project, or by any damage caused by Fire or other casualty or by the combined action of workmen in no way chargeable to the Subcontractor, or by any extraordinary conditions arising out of war or government regulations, or by any other cause beyond the Subcontractor's control and not due to any fault, neglect, act or omission on its part, only then the Subcontractor shall be entitled to an extension of time; such extension to be for a period equivalent to the time lost by reason of any and all of the aforesaid causes, as determined by Mega Contracting Group, LLC. In the event of dispute by the Subcontractor, the matter shall be referred to the Architect whose decision thereon shall be final and binding upon the parties hereto. The Subcontractor shall not be entitled to any such extension of time, however, unless a claim therefor is presented in writing to Mega Contracting Group, LLC within forty-eight (48) hours of the commencement of such claimed delay. Such extension or extensions of time, as determined by Mega Contracting Group, LLC or by the Architect, or the decision or decisions of the Architect that no extension of time shall be allowed, shall release and discharge Mega Contracting Group, LLC of and from any and all claims of whatever character by the Subcontractor on account of the aforesaid or any other causes of delay.

11. **Material Delivered**

The Subcontractor in making or ordering shipments shall not consign or have consigned materials, equipment or any other items in the name of Mega Contracting Group, LLC. The Contractor is under no obligation to make payment for charges on shipments of material made by or to the Subcontractor but may, at its option, pay such charges, in which case the Subcontractor shall reimburse Mega Contracting Group, LLC for the amount of such payments plus a service charge of twenty-five percent (25%) of the amount so paid unless otherwise agreed in writing between Mega Contracting Group, LLC and the Subcontractor.

12. **Dimensions**

Notwithstanding the dimensions given on the plans, specifications and other Contract Documents it shall be the obligation and responsibility of the Subcontractor to take such measurements and

5

coordinate with other trades in order to insure the proper matching and fitting of the work covered by this Agreement with contiguous work.

13. **Shop Drawings**  The Subcontractor shall prepare and submit to Mega Contracting Group, LLC such shop drawings samples, certifications or other documentation as may be necessary to describe completely the details and construction of the Work. Approval of such shop drawings by Mega Contracting Group, LLC and/or the Architect shall not relieve the Subcontractor of its obligation to perform the work in strict accordance with the plans, specifications, the Additional Provisions hereof and the other Contract Documents, nor of its responsibility for the proper matching and fitting of the work with contiguous work.

14. **Contiguous Work**  Should the proper and accurate performance of the work hereunder depend upon the proper and accurate performance of other work not covered by this Agreement, the Subcontractor shall carefully examine such other work, determine whether it is in fit, ready and suitable condition for the proper and accurate performance of the Work hereunder, use all means necessary to discover any defects in such other work, and before proceeding with the Work hereunder, report promptly any such improper conditions and defects to Mega Contracting Group, LLC in writing and allow Mega Contracting Group, LLC a reasonable time to have such improper conditions and defects remedied.

15. **Interpretation of Plans & Specifications**  The work hereunder is to be performed and furnished under the direction and to the satisfaction of the Owner, the Architect, the Funding Agency, the General Contractor and Mega Contracting Group, LLC. The decision of the Architect as to the true construction, meaning and intent of the plans and specifications shall be final and binding upon the parties hereto. Mega Contracting Group, LLC will furnish to the Subcontractor such additional information and plans as may be prepared by the Architect to further describe the work to be performed and furnished by the Subcontractor and the Subcontractor shall conform to and abide by the same.
The Subcontractor shall not make any changes, additions and/or omissions in the work except upon written order of Mega Contracting Group, LLC as provided in paragraph 16 hereof.

16. **Change Orders**  Mega Contracting Group, LLC reserves the right, from time to time, whether the work or any part thereof shall or shall not have been completed, to make changes, additions and/or omissions in the work as it may deem necessary, upon written order to the Subcontractor. The value of the work to be changed, added or omitted shall be stated in said written order and shall be added to or deducted from the price.

The value of the work to be changed, added or omitted shall be determined by the lump sum or unit prices, if any, stipulated herein for such work. If no such prices are stipulated, such values shall be determined by whichever of the following methods or combination thereof Mega Contracting Group, LLC may elect:

(a) By adding or deducting a lump sum or an amount determined by a unit price agreed upon between the parties hereto; or

(b) By adding (1) the actual net cost to the Subcontractor of labor in accordance with the established rates, (2) the actual cost to the Subcontractor of materials and equipment and such other direct costs as may be approved by Mega Contracting Group, LLC, credits, (3) an allowance of 15% combined for overhead and profit for overhead on items (1) and (2) above. No additional overhead and profit will be allowed in case of multiple tier subcontractors.

In the case of omitted work Mega Contracting Group, LLC shall have the right to withhold from payments due or to become due to the Subcontractor an amount which, in Mega Contracting Group, LLC's opinion, is equal to the value of such work until such time as the value thereof is determined, according to the unit prices prevailing in industry.

All changes, additions or omissions in the work ordered in writing by Mega Contracting Group, LLC

6

shall be deemed to be a part of the Work hereunder and shall be performed and furnished in strict accordance with all of the terms and provisions of this Agreement and the other Contract Documents.

The Subcontractor must receive written authorization signed by an officer of the Contractor before proceeding with any extra or additional work. Authorizations not signed by an officer of the Contractor are null and void, and no compensation for any work performed without proper prior written authorization shall be made.

The subcontractor shall, under no circumstances, cause any delay of the Work during any dispute as to the Work or compensation or the meaning of the contract documents, or because of any dissatisfaction with any decision of the Contractor, but shall proceed with the Work promptly, as directed.

17. **Disputes**    Any dispute or claim arising out of this Contract, or from breach of this Contract, and which is not resolved by the terms and provisions of the principal Contract, shall be submitted to the Judicial Court within the County and State of the Contractor's designated principal place of business, and not arbitration, for decision. The subcontractor agrees to participate in, join in, and be bound by any proceeding, be it judicial, administrative, arbitration or other, which directly or indirectly relates to this Contract or project and for which the Contractor demands, by written notice, that the subcontractor participate. Any claim or action by the subcontractor must be commenced against the Contractor within one (1) year of the date the cause of action occurred, but in no event later than one (1) year after substantial performance of this Subcontract, and in no event after final payment to the subcontractor.

18. **Inspection & Defective Work**    The Subcontractor shall at all times provide sufficient, safe and proper facilities for the inspection of the work by Mega Contracting Group, LLC the Architect and their authorized representatives in the field, at shops, or at any other place where materials or equipment for the work are in the course of preparation, manufacture, treatment or storage. The Subcontractor shall, within twenty-four (24) hours after receiving written notice from Mega Contracting Group, LLC to that effect, proceed to take down all portions of the work and remove from the premises all portions of the work and remove from the premises all materials whether worked or unworked, which the Architect or Mega Contracting Group, LLC shall condemn as unsound, defective or improper or as in any way failing to conform to this Agreement or the Plans, Specifications or other Contract Documents, and the Subcontractor, at its own cost and expense, shall replace the same with proper, and satisfactory work and materials and make good all work damaged or destroyed by or as a result of such unsound, defective, improper or nonconforming work or materials or by the taking down, removal or replacement thereof.

19. **Failure to Prosecute etc.**    Should the Subcontractor at any time refuse or neglect to supply a sufficiency of skilled workmen or materials of the proper quality and quantity, or fail in any respect to prosecute the Work with promptness and diligence, or cause by any act or omission the stoppage or delay of or interference with or damage to the Work of Mega Contracting Group, LLC or of any other Contractors or Subcontractors on the project, or fail in the performance of any of the terms and provisions of this Agreement or of the other Contract Documents, or should the Architect determine that the Work or any portion thereof is not being performed in accordance with the Contract Documents, or should there be filed by or against the Subcontractor a petition in bankruptcy or for an arrangement or reorganization, or should the Subcontractor become insolvent or be adjudicated a bankrupt or go into liquidation or dissolution, either voluntarily or involuntarily or under a court order, or make a general assignment for the benefit of creditors, or otherwise acknowledge insolvency, then in any of such events, each of which shall constitute a default hereunder on the Subcontractor's part. Mega Contracting Group, LLC shall have the right, in addition to any other rights and remedies provided by this Agreement and the other Contract Documents or by law, after three (3) days written notice to the Subcontractor mailed or delivered to the last known address of the latter, (a) to perform and furnish through itself or through others any such labor or materials for the work and to deduct

7

the cost thereof from any monies due or to become due to the Subcontractor under this agreement, and/or (b) to terminate the employment of the Subcontractor for all or any portion of the Work, enter upon the premises and take possession, for the purpose of completing the work, of all materials, equipment, scaffolds, tools, appliances and other items thereon, all of which the Subcontractor hereby transfers, assigns and assets over to Mega Contracting Group, LLC for such purpose, and to employ any person or persons to complete the Work and provide all the labor, services, materials, equipment and other items required therefore. In case of such termination of the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Agreement until the Work shall be wholly completed to the satisfaction of Mega Contracting Group, LLC and the Architect and shall have been accepted by them, at which time, if the unpaid balance of the amount to be paid under this Agreement shall exceed the cost and expense incurred by Mega Contracting Group, LLC completing the work, such excess shall be paid by Mega Contracting Group, LLC to the Subcontractor; but if such cost and expense shall exceed such unpaid balance, then the Subcontractor shall pay the difference to Mega Contracting Group, LLC. Such cost and expense shall include, not only the cost of completing the Work to the satisfaction of the General Contractor, Mega Contracting Group, LLC, the Architect, the Owner and the Funding Agency, and of performing and furnishing all labor, services, materials, equipment, and other items required therefore , but also all losses, damages, costs and expenses, including legal fees and disbursements sustained, incurred or suffered by reason of or resulting from the Subcontractor's default.

If any equipment on the job site is under a lease agreement between the Subcontractor and a third party at the time of repossession by Mega Contracting Group, LLC, then Mega Contracting Group, LLC will at its option assume the remaining lease payments or have the Subcontractor remove such equipment from the job site at no cost or obligation to Mega Contracting Group, LLC.

| | | |
|---|---|---|
| 20. | Liquidated Damages | The subcontractor understands and acknowledges that failure to complete the Work under this agreement within the time specified herein will cause loss and damage to the Owner, including but not limited to diminution of the value of the premises, waste of the Owner's funds, human material resources, risk of loss of funds from funding agencies and inconvenience to the public, the extent of which is difficult to ascertain in monetary terms. For this reason the General Contract provides for fair and reasonable compensation to the Owner for such losses resulting from delay, which compensation shall not be construed as a penalty. |

In the event that the Subcontractor shall fail to complete the Work covered by this agreement within schedule plus authorized time extensions, or if the subcontractor in the sole determination of Mega Contracting Group, LLC shall have abandoned the work, the subcontractor shall pay to the Contractor for each and every calendar day, the liquidated damage value set forth in the General Contract $500 (per day) multiplied by the number of calendar days expended beyond the original completion date, or such date to which the time for completion was extended, until such work is satisfactorily completed and accepted.

Liquidated damages received hereunder are not intended to be nor shall they be treated as either a partial or full waiver or discharge of the right of Mega Contracting Group, LLC to recover against the Subcontractor pursuant to the provisions of paragraph 19 herein, or of any other right or remedy of Mega Contracting Group, LLC provided under this agreement or at law for damages not specifically resulting from delay.

| | | |
|---|---|---|
| 21. | Loss or Damage | Mega Contracting Group, LLC shall not be responsible for any loss or damage to the Work to be performed and furnished under this agreement, how ever caused, until after final acceptance thereof by Mega Contracting Group, LLC and the Architect, nor shall Mega Contracting Group, LLC be responsible for loss of or damages to materials, tools, equipment, appliances or other personal property owned, rented or used by the Subcontractor or anyone employed by it in the performance of the Work, however caused. |
| 22. | Fire | The General Contractor or the Owner shall effect and maintain fire insurance with extended |

8

Insurance    coverage, if specified or otherwise required) upon all work, materials and equipment incorporated in the project and all materials and equipment on or about the premises intended for permanent use or incorporation in the project and incident to the construction thereof, the capital value of which is included in the cost of the work, but not including any contractor's machinery, tools, equipment, appliances or other personal property owned, rented or used by the Subcontractor or anyone employed by it in the performance of the work.

The total value of the property described above as insurable under this Article and as shown on the approved monthly requisition plus the total value of similar property incorporated in the Project or delivered on the Premises during the month but not included in said requisition, as reported by the Subcontractor to Mega Contracting Group, LLC for insurance purposes only, shall determine the total value of the Subcontractor's work, materials and equipment to be insured under this Article.

The maximum liability to the Subcontractor under this insurance shall be for not more than that proportion of any loss which the last reported value of the insured property bore to the actual value of said property at the time of such last report and in no event for more than the actual loss.

In the event of a loss insured under this Article, the Subcontractor shall be bound by any adjustment which shall be made between the General Contractor, Mega Contracting Group, LLC the Owner and the insurance company or companies. Loss, if any, shall be made payable to the General Contractor, Mega Contracting Group, LLC and/or the Owner, as their interest may appear, for the account of whom it may concern.

23. **Cleaning Up**    The Subcontractor shall, at its own cost and expense, (1) keep the premises free at all times from all waste materials, packaging materials and other rubbish accumulated in connection with the execution of its work by collecting and depositing said materials and rubbish in locations or containers as designated by Mega Contracting Group, LLC (2) clean and remove from its own work and from all contiguous work of others any soiling, staining, mortar, plaster, concrete or dirt caused by the execution of its work and make good all defects resulting therefrom, (3) at the completion of its work in each area, perform such cleaning as may be required to leave the area "broom clean," and (4) at the entire completion of its work, remove all of its tools, equipment, scaffolds, shanties and surplus materials. Should the Subcontractor fail to perform any of the foregoing to Mega Contracting Group, LLC satisfaction, Mega Contracting Group, LLC shall have the right without notice to perform and complete such work itself or through others and charge the cost thereof to the Subcontractor.

24. **Compliance with Law & Permits**    The subcontractor shall obtain at its own expense all permits, licenses, tests and inspections required under the Contract Documents and/or pursuant to applicable law and shall give all notices necessary to the lawful prosecution of the Work. The subcontractor shall comply strictly with all local, municipal, state, federal and other governmental laws, rules, regulations, standards, requirements and codes applicable to the work and the Subcontractor's performance thereof, including among others, those relating to safety, discrimination in employment, fair employment practices or equal employment opportunity, and with the requirements of the American Insurance Association, whether or not provided for by the Plans, Specifications, General Conditions or other Contract Documents, without additional charge or expense to Mega Contracting Group, LLC and shall also be responsible for and correct, at its own cost and expense, any violations thereof resulting from or in connection with the performance of its work. The Subcontractor shall at any time upon demand furnish such proof as Mega Contracting Group, LLC may require showing such compliance and the correction of such violations. The Subcontractor agrees to hold harmless and indemnify the General Contractor and Mega Contracting Group, LLC from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, costs and expenses, including legal fees and disbursements, caused or occasioned directly or indirectly by the Subcontractor's failure to comply with any of said laws, ordinances, rules, regulations, standards, orders, notices or requirements or to correct such violations.

25. **Labor to be**    The Subcontractor shall not employ men, means, materials or equipment which may cause strikes,

9

| | |
|---|---|
| Employed | work stoppages or any disturbances by workmen employed by the Subcontractor, Mega Contracting Group, LLC or other contractors or subcontractors on or in connection with the Work or the Project or the locations thereof. The Subcontractor agrees that all disputes as to jurisdiction of trades shall be adjusted in accordance with any plan for the settlement of jurisdictional disputes which may be in effect either nationally or in the locality in which the work is being done and that it shall be bound and abide by all such adjustments and settlements of jurisdictional disputes, provided that the provisions of this Article shall not be in violation of or in conflict with any provisions of law applicable to the settlement of such disputes. Should the Subcontractor fail to carry out or comply with any of the foregoing provisions, Mega Contracting Group, LLC shall have the right, in addition to any other rights and remedies provided by this Agreement or the other Contract Documents or by law, after three (3) days written notice mailed or delivered to the last known address of the Subcontractor, to terminate this Agreement or any part thereof or the employment of the Subcontractor for all or any portion of the Work, and, for the purpose of completing the work, to enter upon the Premises and take possession, in the same manner, to the same extent and upon the same terms and conditions as set forth in paragraph 17 of this Agreement. |

Should the General Contractor, Mega Contracting Group, LLC or the Owner deem anyone employed by the Subcontractor to be unsatisfactory, the Contractor will so notify the Subcontractor and such unsatisfactory individual shall immediately be replaced.

26. **Compliance with Labor Laws and Regulations**

~~It is understood that the Subcontractor is required to comply with any requirements contained in the Contract Documents or under applicable law regarding utilization of MBE, WBE, DBE subcontractors and minority and/or woman employees at the job site.~~

The project is governed by requirements of New York State Labor Law, Rule 23, Industrial Code, latest edition, and all employees of the Subcontractor or his Subcontractors performing any work at the Project are to be compensated in full accordance with the wage schedule applicable.

27. **Taxes & Contributions**

The Subcontractor for the price herein provided for, hereby accepts and assumes exclusive liability for and shall indemnify, protect and Contributions save harmless the General Contractor, Mega Contracting Group, LLC and the Owner from and against the payment of:

(1) All contributions, taxes or premiums (including interest and penalties thereon) which may be payable under the Unemployment Insurance Law of any State, the Federal Social Security Act, Federal, State, County and/or Municipal Tax Withholding Laws, or any other law, measured upon the payroll of or required to be withheld from employees, by whomsoever employed, engaged in the Work to be performed and furnished under this Agreement.

(2) All sales, use, personal property and other taxes (including interest and penalties thereon) required by any Federal, State, County, Municipal or other law to be paid or collected by the Subcontractor or any of its subcontractors or vendors or any other person or persons acting for, through or under it or any of them, by reason of the performance of the work or the acquisition, ownership, furnishing or use of any materials, equipment, supplies, labor, services or other items for or in connection with the Work.

(3) All pension, welfare, vacation, annuity and other union benefit contributions payable under or in connection with labor agreements with respect to all persons, by whomsoever employed, engaged in the work to be performed and furnished under this Agreement.

28. **Mechanics' Liens or Claims**

If any subcontractor, laborer or materialman of the Subcontractor or any other person directly or indirectly acting for, through or under it or any of them files or maintains a mechanic's lien or claim against the Project or Premises or any part thereof or any interests therein or any improvements thereon or against any monies due or to become due from the Owner to the General Contractor, for or on account of any work, labor, services, materials, equipment or other items performed or furnished for or in connection with the work or under any change order or supplemental agreement

10

for extra or additional work in connection with the Projects, the Subcontractor agrees to cause such liens and claims to be satisfied, removed or discharged at its own expense by bond, payment or otherwise within ten (10) days from the date of the filing thereof; upon its failure to do so Mega Contracting Group, LLC shall have the right, in addition to all other rights and remedies provided under this Agreement and the other Contract Documents or by law, to cause such liens or claims to be satisfied, removed or discharged by whatever means Mega Contracting Group, LLC chooses, at the entire cost and expenses of the Subcontractor (such cost and expense to include legal fees and disbursements). The Subcontractor agrees to indemnify, protect and save harmless the General Contractor, Mega Contracting Group, LLC and the Owner from and against any and all such liens and claims and actions brought or judgments rendered thereon, and from and against any and all loss, damages, liability, costs and expenses, including legal fees and disbursements, which the General Contractor, Mega Contracting Group, LLC and/or the Owner may sustain or incur in connection therewith.

It is expressly agreed and understood that if any lien is made or filed against the General Contractor, Mega Contracting Group, LLC or the Owner upon a private or public improvement contract by the Subcontractor or any person claiming under Subcontractor and it subsequently determined that said lien is invalid or willfully exaggerated, Mega Contracting Group, LLC shall be entitled to recover from the Subcontractor its damages, which shall include the amount of any premium for a bond given to obtain the discharge of the lien, or the interest on any money deposited for the purpose of discharging the lien, reasonable attorney's fees for services in securing the discharge of the lien and an amount equal to the difference by which the amount claimed to be due or to become due as stated in the notice of lien exceeded the amount actually due or to become due thereon.

29. **Assignment & Subletting**   Neither this Agreement nor any monies due or to become due under shall be assignable without the prior written consent of Mega Contracting Group, LLC nor shall the whole or any part of this Agreement be sublet without like prior written consent. Any such assignment or subletting without such prior written consent shall be void and of no effect and shall vest no right of action in the assignee or Subcontractor against Mega Contracting Group, LLC. Consent to any assignment or subletting shall not relieve the Subcontractor of any of its agreements duties, responsibilities or obligations under this Agreement and the other Contract Documents, and the Subcontractor shall be and remain as fully responsible and liable for the defaults, neglects, acts and omissions of its assignees and Subcontractors and all persons directly or indirectly employed by them as it is for its own defaults neglects, acts and omissions and those of its own officers, agents, servants and employees. The Subcontractor shall bind each of its subcontractors to all of the terms, provisions and covenants of this Agreement and the other Contract Documents with respect to the sublet work. Mega Contracting Group, LLC will consent to any contractual relationship between Mega Contracting Group, LLC and any Subcontractor to whom the work or any portion thereof is sublet, and shall not vest any right or right of action in such Subcontractor against.

30. **Termination of Agreement**   Mega Contracting Group, LLC shall have the right at any time by written notice to the Subcontractor, to terminate this Agreement with cause and require the Subcontractor to cease work hereunder in which case, Mega Contracting Group, LLC shall indemnify the Subcontractor pursuant to the provisions of paragraph 19 of this contract.

31. **Termination by Owner**   Should the Owner terminate the General Contract or any part of the General Contract which includes the Work of the Subcontractor, Mega Contracting Group, LLC will notify the Subcontractor in writing, and upon receipt of said notice, this agreement shall also be terminated and the Subcontractor shall immediately stop the Subcontractor's work. In the event of such Owner termination, the liability of Mega Contracting Group, LLC shall be limited to the extent of Mega Contracting Group, LLC's recovery on the subcontractor's behalf under the Contract Documents. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner termination and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

11

**32. Guarantees**

The Subcontractor hereby guarantees the work to the full extent provided in the Plans, Specifications, General Conditions, Special Conditions and other Contract Documents. The Subcontractor shall provide such written warrantees and guarantees from manufactures or otherwise, as are required to be furnished under the General Contract or other Contract Documents.

The Subcontractor shall remove, replace and/or repair at its own expense and at the convenience of the Owner any faulty, defective or improper work, materials or equipment discovered within one (1) year from the date of the acceptance of the project as a whole by the Architect and the Owner or for such longer periods as may be provided in the Plans, Specifications, General Conditions, Special Conditions or other Contract Documents.

Without limitation by the foregoing, the Subcontractor shall pay in addition for all damage to the project resulting from defects in the Work and all costs and expenses necessary to correct, remove, replace and/or repair the work and any other work or property which may be damaged in correcting, removing, replacing or repairing the Work. All manufacturers warrantees and guarantees to be presented to Mega Contracting Group, LLC upon job completion.

**33. Accident Prevention**

The subcontractor shall protect the property of the Owner and of adjacent property. The Subcontractor agrees that the prevention of accidents to workmen engaged upon or in the vicinity of the work is its responsibility. The Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety as shall be applicable to the work, including among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been adopted or issued thereunder, and with the safety standards established during the progress of the work by Mega Contracting Group, LLC when so ordered. The Subcontractor shall stop any part of the work which Mega Contracting Group, LLC deems unsafe until corrective measures satisfactory to Mega Contracting Group, LLC have been taken, and the Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. Should the Subcontractor neglect to take such corrective measures, Mega Contracting Group, LLC may do so at the cost and expense of the Subcontractor and may deduct the cost thereof from any payments due or to become due to the Subcontractor. Failure on the part of Mega Contracting Group, LLC to stop unsafe practices shall in no way relieve the Subcontractor of its responsibility therefor.

**34. Liability for Damage & Personal Injury**

The Subcontractor hereby assumes entire responsibility and liability for any and all damages or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of, or occurring in connection with the execution of the Work. Except to the extent, if any, expressly prohibited by statute, should any claims for such damage or injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon Mega Contracting Group, LLC alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of Mega Contracting Group, LLC the Subcontractor agrees to indemnify and save harmless Mega Contracting, Inc., Mega Contracting Group, LLC its officers, agents, servants and employees from and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that the General Contractor, Mega Contracting Group, LLC its officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Subcontractor agrees to and does hereby assume, on behalf of the General Contractor, Mega Contracting Group, LLC its officers, agents, servants and employees, the defense of any action at law or in equity which may be brought against the General Contractor, Mega Contracting Group, LLC its officers, agents, servants or employees upon or by reason of such claims and to pay on behalf of the General Contractor, Mega Contracting Group, LLC its officers, agents, servants or employees, upon its demand, the amount of any judgment that may be entered against the General Contractor, Mega Contracting Group, LLC its officers, agents, servants or employees in any such action. In the event

12

that any such claims, loss, cost, expense, liability, damage or injury arise or are made, asserted or threatened against the General Contractor, Mega Contracting Group, LLC its officers, agents, servants or employees, Mega Contracting Group, LLC shall have the right to withhold from any payments due or to become due to the Subcontractor an amount sufficient in its judgment to protect and indemnify it and its officers, agents, servants and employees from and against any and all such claims, loss, cost, expense, liability damage or injury, including legal fees and disbursements, or Mega Contracting Group, LLC in its discretion, may require the Subcontractor, to furnish a surety bond satisfactory to Mega Contracting Group, LLC guaranteeing such protection, which bond shall be furnished by the Subcontractor within five (5) days after written demand has been made therefor.

35. **Insurances**    Before commencing the Work, the Subcontractor shall procure and maintain, at its own expense, until completion and final acceptance of the work, at least the following insurance from insurance companies satisfactory to Mega Contracting Group, LLC.

(A) Subcontractor shall, without in any way altering Subcontractor's liability under this Agreement or applicable law, obtain, pay for and maintain insurance for the coverages and amounts of coverage not less than those set forth below in the Schedule of Insurance Coverages and shall provide to Mega Contracting Group, LLC certificates issued by insurance companies with a Best's rating of "A", satisfactory to Mega Contracting Group, LLC, to evidence such coverage before any work commences at the job site. Such certificates shall provide that there shall be no termination, non-renewal, modification or expiration of such coverage without thirty (30) days' prior written notice to Mega Contracting Group, LLC, the General Contractor and the Owner, who shall also be named as an additional insured. In the event of any failure by Subcontractor to comply with the provisions of hereof, Mega Contracting Group, LLC may, at its option, on notice to Subcontractor, suspend the contract for cause until there is full compliance with this Paragraph and/or terminate the contract for cause. Alternatively, Mega Contracting Group, LLC may purchase such insurance at Subcontractor's expense, provided that Mega Contracting Group, LLC shall have no obligation to do so and if Mega Contracting Group, LLC shall do so, Subcontractor shall not be relieved of or excused from the obligation to obtain and maintain such insurance amounts and coverages. Subcontractor shall provide to Mega Contracting Group, LLC a certified copy of any and all applicable insurance policies upon request of the Mega Contracting Group, LLC.

(B) Subcontractor shall require all its subcontractors to carry similar insurance coverages and limits of liability as required herein, adjusted to the nature of subcontractor's operations and submit same to Mega Contracting Group, LLC for approval before the commencement of work by any contractor.

(C) The Subcontractor shall not permit any sub-subcontractor to commence work at the site until Subcontractor has obtained all the insurance required by Mega Contracting Group, LLC from such sub-subcontractors and such insurance has been approved by the Mega Contracting Group, LLC; nor shall any Subcontractor allow any sub-subcontractor to commence work on his sub-subcontract until all similar insurance has been so obtained and approved. Mega Contracting Group, LLC, the General Contractor and the Owner shall be named as additional insureds. Approval of the insurance by the Mega Contracting Group, LLC shall not relieve or decrease the liability of any Subcontractor hereunder. Copies of such policies of Insurance acceptable to the Mega Contracting Group, LLC shall be filed with the Mega Contracting Group, LLC as requested, prior to commencement of the work in a form acceptable to the Mega Mega Contracting Group, LLC. (Note: ACORD or other blank certificates are not acceptable unless accompanied by letter of transmittal from the insurance company attesting to the accuracy and validity of such certificate.) All insurance shall be with insurance companies, with a Best's rating of "A", acceptable to Mega Contracting Group, LLC. Insurance policies as described below shall be obtained and maintained during the life of each Contract:

    a)    Statutory Worker's Compensation and Employer's Liability Insurance for all of the Subcontractor's employees to be engaged in work on the project under this Contract, with minimum limits of $500,000.00 for each disease and accident. In case any such work is sublet, this Agreement shall at the option of the Mega Contracting Group, LLC be void and of no effect unless the Subcontractor shall secure compensation for the benefit of and keep insured for the life of the Agreement, his employees, in compliance with provisions of the Worker's

13

Compensation Law of the State of New York.

b) Comprehensive General Liability, including contingent, contractual products, and completed operations (completed operations coverage to be in effect for three (3) years following Final Completion), with a minimum limit of $5,000,000.00 combined single limit for bodily injury and property damage, and $5,000,000.00 Annual Aggregate, with endorsements to the effect that aggregate limits of liability coverage shall apply to each Project at which the Subcontractor performs work. Explosion, demolition and collapse hazards must be included.

c) Automobile Liability, including owned, non-owned and hired cars with minimum limits of $1,000,000.00 bodily injury and $1,000,000.00 property damage, combined single limit and statutory uninjured motorists and basis NY No Fault Coverage.

d) Indemnification Agreement and Hold Harmless Clause, insured by contractual liability, shall be identified and its language typed on the reverse side of the certificate to the effect that the Subcontractor agrees to indemnify and save harmless Mega Contracting Group, LLC, the General Contractor and the Owner to the extent permitted by law against loss or expense including attorney's fees, by reason of any liability imposed by law upon Mega Contracting Group, LLC, the General Contractor or the Owner, for damage because of bodily injuries, including death at any time resulting there from, sustained by any person or persons, or on account of damage to property arising out of or in consequence of the performance of this Agreement, whether such injuries to persons or damage to property are due or claimed to be due to any negligence of Mega Contracting Group, LLC, the General Contractor or the Owner, or theirs employees or agents, or any other person. This endorsement shall not apply if the insured or indemnity is an Architect, Engineer or Surveyor, to any liability arising out of defects in maps, plans, designs or specifications prepared or used by such Architect, Engineer, or Surveyor or their designated agents.

e) All certificates issued in support of the above requirements must carry positive statements that the specific coverages required are provided. All insurance shall be obtained from companies acceptable to Mega Contracting Group, LLC and with a "Best" rating no lower than "A". All insurance shall be "occurrence basis" insurance coverage, and "claims made" insurance coverage shall be deemed unacceptable.

f) If at any time, any of the insurance should be cancelled, not renewed or materially modified so that insurance is not in effect as required, the Mega Contracting Group, LLC may direct the Subcontractor to suspend the work. In that event, no extension of time to complete the work shall be granted.

1. **Workmen's Compensation and Employer's Liability Insurance** in accordance with the laws of the State in which the work is situated.

2. **Contractor's Comprehensive General Liability Insurance** including Contractual Liability Insurance against the liability assumed herein above with Hold Harmless Indemnification clause on certificate, including Contractor's Protective Liability Insurance if the Subcontractor sublets to another all or any portion of the work, with the following minimum limits:
Public Liability per person/per occurrence:
Bodily Injury, including death:              $5,000,000.00
Property Damage:                             $5,000,000.00

3. **Automobile Liability Insurance** covering all owned, non-owned and hired automobiles used in connection with the work, with the following limits:
Automobile Liability per person/per occurrence:
Bodily Injury, including death:              $1,000,000.00

14

Property Damage:                    $1,000,000.00

Mega Contracting Group, LLC, Mega Contracting, Inc. and the Owner to be named as additional insured on a primary basis to the Subcontractor's Comprehensive General Liability using appropriate ISO forms that include Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provide equivalent protection. Before commencing the Work, the Subcontractor shall furnish a certificate, satisfactory to Mega Contracting Group, LLC from each insurance company showing that the above insurance is in force, stating policy numbers, dates of expiration, and limits of liability thereunder, and further providing that the insurance will not be canceled or changed until the expiration of at least ten (10) days after written notice of such cancellation or change has been mailed to and received by Mega Contracting Group, LLC. If the Subcontractor fails to procure and maintain such insurance, Mega Contracting Group, LLC shall have the right to procure and maintain the said insurance for and in the name of the Subcontractor and the Subcontractor shall pay the cost thereof and shall furnish all necessary information to make effective and maintain such insurance.

4.    Waivers of subrogation. The contractor and subcontractor waive all rights against (1) each other and any of their Subcontractors, Sub-subcontractors, agents and employees, each of the other, and (2) the owner, the General Contractor, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other perils to the extent covered by property insurance, provided under the Contract or other property insurance applicable to the work except such rights as they may have to proceeds of such insurance held by the owner as fiduciary. The subcontractor shall require of the subcontractor's, sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. If possible, the policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

36.    Notices    All notices, demands, requests, instructions, approvals, claims and orders between Mega Contracting Group, LLC and the Subcontractor must be in writing, and shall be delivered by hand or sent by registered or certified mail or by Federal Express, Express Mail or such other overnight mail service that provides a receipt to the sender. Receipt of notice by the party to whom the notice is transmitted shall be deemed to have occurred: (i) upon receipt if hand delivered; (ii) three days from the date of mailing, if mailed; (iii) the next Business Day after transmittal by overnight delivery service that provides a receipt to the sender.

All notices to Mega Contracting Group, LLC shall be delivered to the following address or to such other address as the Contractor May notify the Subcontractor of:

HERCULES ARGYRIOU
MEMBER
MEGA CONTRACTING GROUP, LLC
22-60 46TH STREET
ASTORIA, NY 11105

All notices and correspondence to the Subcontractor shall be sufficiently given if delivered to the office of the Subcontractor specified in its proposal or to such other office as the Subcontractor may notify Mega Contracting Group, LLC in writing from time to time, or if delivered to the project superintendent of the Subcontractor.

37.    Right of    Mega Contracting Group, LLC may off set against any payment due under this agreement any
        Off Set    indebtedness whether under this subcontract or otherwise.

15

38. **Bonds**

The Subcontractor shall upon request furnish to Mega Contracting Group, LLC a labor and material payment bond and a performance bond each for 100% of the subcontract price.

In the event that Mega Contracting Group, LLC requests payment & performance bonds from the subcontractor and subcontractor is unable to obtain such bonds, then Mega Contracting Group, LLC may, at its options, consider increasing the retainage amount as provided for in paragraph 6 from ten percent (10%) to fifteen percent (15%).

39. **Entire Agreement**

This agreement constitutes the entire agreement between the parties hereto. No oral representations or other agreements have been made by Mega Contracting Group, LLC except as stated in this Agreement. This Agreement may not be changed in any way except as herein provided, and no term or provision hereof may be waived by Mega Contracting Group, LLC except in writing, signed by its duly authorized officer or agent. The marginal descriptions of any term or provision of this Agreement are for convenience only and shall not be deemed to limit, restrict or alter the content, meaning or effect thereof.

40. **Provisions of Law Deemed Inserted / Severability**

Each and every provision of law and clause required to be inserted in this agreement shall be deemed to be inserted herein and the agreement shall be read and enforced as though it were included herein. If any provision or clause of this contract is deemed invalid or against public Policy, the remaining parts of this contract shall be deemed to be independent of that clause and shall remain in full force and effect.

The said parties, for themselves, their heirs, executors, administrators, successors and assigns, do hereby agree to the full performance of all of the terms and provisions herein contained.

In Witness Whereof the parties to these presents have hereunto set their hands as of the day and year first above written.

| CONTRACTOR | SUBCONTRACTOR |
|---|---|
| Mega Contracting Group, LLC | ADS Windows, Inc. |
| By: | By: |
| George Poulon | Artie DiSomma, President |
| Dated: 7/26/10 | Dated: 7-23-2010 |

16

Rider "C" to Subcontractor Agreement

The undersigned do personally guarantee the subcontractor's performance of each and every obligation of the foregoing subcontract agreement. The liability of the undersigned shall be joint and several, together with that of Subcontractor and the other personal guarantors, if any. The undersigned further agree (s) that in the event there are multiple guarantors, the invalidity of the signature of any other guarantor (s) shall not constitute a defense to or a release from liability under this guarantee for the others (s).

_____
_____ (Individually)
_____
Personal Guarantor

ACKNOWLEDGEMENT

STATE OF NEW YORK   )
                    )  ss.:
COUNTY OF QUEENS    )

On this _____ day of _____, 200___, before me personally came _____ to me known, who being duly sworn, did depose and say that he resides in _____, New York, that he executed the foregoing Agreement.

_____
_____ Notary Public

17

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

OP IDbS
ADSWI-1

DATE (MM/DD/YYYY)
07/23/10

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | | |
|---|---|---|---|
| Dale Group, Inc.<br>PO Box 6<br>Florham Park NJ 07932<br>Phone: 973-377-7000   Fax: 973-377-4614 | | | |
| | INSURERS AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: First Mercury Insurance Co. | | |
| | INSURER B: Accolode Insurance Company | | 11045 |
| ADS Windows .Inc<br>25 Star Street<br>Iselin NJ 08830 | INSURER C: National Union Fire Ins. Co. | | 228 |
| | INSURER D: Sparta Insurance Company | | 20613 |
| | INSURER E: | | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS MADE   X OCCUR | EPNY000097 | 03/17/10 | 03/17/11 | EACH OCCURRENCE | $ 1000000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $ 50000 |
| | | | | | | MED EXP (Any one person) | $ 5000 |
| | | | | | | PERSONAL & ADV INJURY | $ 1000000 |
| | | | | | | GENERAL AGGREGATE | $ 2000000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY  X PRO-JECT  ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $ 2000000 |
| | | AUTOMOBILE LIABILITY<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS<br>☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS<br>☐ NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY<br>☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN  EA ACC<br>AUTO ONLY:   AGG | $<br>$ |
| C | X | EXCESS / UMBRELLA LIABILITY<br>X OCCUR  ☐ CLAIMS MADE<br>☐ DEDUCTIBLE<br>X RETENTION  $ 10000 | EBU016008143 | 03/17/10 | 03/17/11 | EACH OCCURRENCE | $ 10000000 |
| | | | | | | AGGREGATE | $ 10000000 |
| | | | | | | | $ |
| | | | | | | | $ |
| D | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ Y/N<br>(Mandatory in NH)<br>If yes, describe under SPECIAL PROVISIONS below | 003WK05130 | 03/19/10 | 03/19/11 | X WC STATU-TORY LIMITS   OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $ 1000000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1000000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1000000 |
| B | | OTHER<br>Floater | IM86784029 | 03/17/10 | 03/17/11 | InTransit<br>Inst Fltr | 250000<br>750000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

Re Project/Loc: 255 4th Avenue - Brooklyn, NY 11215, Please note the
certificate holder and the following on the next page are named as
additional insured:

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| MEGACO1<br><br>MEGA Contracting Group, LLC<br>22-60-46th Street<br>Astoria NY 11105 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  30  DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

ACORD 25 (2009/01)

© 1988-2009 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

NOTEPAD

| HOLDER CODE | MEGRO01 | | | DDSN1 | 1 | PAGE | 33 |
|---|---|---|---|---|---|---|---|
| INSURED'S NAME | ADS Hanover Inc | | | OP ID CS | | DATE 07/23/13 | |

1. Mega Contracting Group LLC
   22-60 46TH Street
   Astoria, NY 11105
2. Mega Contracting Inc.
   22-60 46th Street
   Astoria, NY 11105

3. 560 Carroll Street LLC
   22-60 46th Street
   Astoria, NY 11105

4. Amalgamated Bank ISAOA/ATIMA
   275 Seventh Avenue, 6th Floor
   New York, NY 10001

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

This Certificate of Insurance does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.